# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CRYSTAL M. CANNON,                    :
                                      :
        Plaintiff,                    :
                                      :
    v.                                :        Civ. No. 15-29-LPS
                                      :
CAROLYN W. COLVIN,                    :
Acting Commissioner of Social Security, :
                                      :
        Defendant.                    :

---

Angela Pinto Ross, Esquire, DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Wilmington, DE.

    Attorney for Plaintiff.


Charles M. Oberly, III, Esquire, United States Attorney and Heather Benderson, Esquire, Special Assistant United States Attorney for the District of Delaware.

Of Counsel: Nora Koch, Esquire, Acting Regional Chief Counsel, Region III and Patricia M. Smith, Esquire, Assistant Regional Counsel, of the Social Security Administration, Philadelphia, Pennsylvania.



## MEMORANDUM OPINION



September 29, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    INTRODUCTION

Plaintiff Crystal M. Cannon ("Cannon" or "Plaintiff") appeals a final decision of the Acting Commissioner of Social Security, Defendant Carolyn W. Colvin ("Commissioner" or "Defendant"), that denied Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Title II and Title XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 401-433, 1381-1383f.  The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by Cannon and the Commissioner.  (D.I. 15, 21)  Cannon seeks reversal of the Commissioner's final decision and remand to the Commissioner for payment of benefits, or, alternatively, remand for additional administrative proceedings.  (D.I. 15; D.I. 16 (Plaintiff's Opening Br.))  Defendant's cross-motion for summary judgment seeks affirmance of her final decision denying Plaintiff's applications for DIB and SSI. (D.I. 21; D.I. 22 (Defendant's Br.))

For the reasons set forth below, the Court finds substantial evidence in the record to support the Commissioner's final decision.  Therefore, the Court will deny Plaintiff's motion for summary judgement and grant Defendant's cross-motion for summary judgment.

## II.    BACKGROUND

### A.    Procedural History

On June 14, 2010, Cannon filed an application for DIB and SSI benefits, alleging disability beginning June 1, 2008, due to: degenerative disc disease, Grave's disease (thyroid disorder), diabetes mellitus, osteoarthritis, shoulder dysfunction, and obesity.  (D.I. 8 at 23

1

(Transcript of the Administrative Law Judge's Hearing, "Tr."); *see also* D.I. 16 at 2)  The claims were initially denied on November 16, 2010, and again upon reconsideration on May 18, 2011. (Tr. at 23)  Plaintiff filed a request for hearing on July 14, 2011, which was held before an Administrative Law Judge ("ALJ") on January 28, 2013.  (*Id.*)  In a March 12, 2013 decision, the ALJ found that Cannon was not disabled.  (*See* Tr. at 20-40 ("ALJ's Opinion"))  Plaintiff filed a request for review by the Appeals Council on April 9, 2013, but the Appeals Council denied this request on November 5, 2014. (D.I. 16 at 3)  Hence, the ALJ's decision became the final decision of the Commissioner.  (D.I. 16 at 3)

On January 9, 2015, Cannon filed a complaint seeking judicial review of the ALJ's decision.  (D.I. 2)  Cannon moved for summary judgment on December 4, 2015 (D.I. 15), and the Commissioner filed a cross-motion for summary judgment on January 7, 2016 (D.I. 21).

**B.      Factual Background**

**1.      Plaintiff's Medical History, Treatment, and Conditions**

Plaintiff alleges that in 2005 and 2007, she suffered work-related injuries to her knee and lower back.  (*See* D.I. 16 at 4)  Plaintiff's application for DIB and SSI includes documentation from multiple doctors regarding the treatment she obtained for her lower back and knee.

**a.      Low back**

On August 3, 2009, Plaintiff presented to neurosurgeon Bruce Rudin with complaints of low back and hip pain.  (Tr. at 284)  Following examination, Dr. Rudin recommended a lumbar interbody fusion surgery.  (*Id.* at 284)  Due to insurance issues, she was unable to get the surgery at this time.  (*Id.* 285)

When Plaintiff returned on March 18, 2010, an MRI of the lumbar spine showed

degenerative disc disease at L5-S1, the lumbosacral joint. (*Id*. at 297)

In April 2010, Plaintiff twice saw Dr. Pawan Rastogi, a neurosurgeon. (*Id*. at 293-94)  He recommended surgery. (*Id.*)  On June 7, 2010, Dr. Rastogi performed lumbar fusion surgery. (*Id.* at 201, 203)

In post-operative visits with Dr. Rastogi in July, August, and September 2010, Plaintiff generally reported improvement but not entire elimination of her back pain. (*See id.* at 304, 325-27)

As Defendant writes: "The evidence shows that after Plaintiff's successful back surgery in June of 2010, she required no further treatment after her final examination by her neurosurgeon, Pawan Rastogi, M.D., on September 28, 2010." (D.I. 22 at 2, *see* Tr. at 327)

### b.    Right knee and shoulder

On September 30, 2009, Dr. Evan Crain, an orthopedic specialist, evaluated Cannon's right knee. (Tr. at 286)  Among other things, Dr. Crain took an x-ray, recommended exercises and follow-up, and released Plaintiff for full duty work with no restrictions. (*See id.* at 286-88)

Cannon did not return to Dr. Crain until January 19, 2011. (*Id.* at 384)  At this appointment Dr. Crain found weakness in Plaintiff's right knee and shoulder. (*Id.* at 385)  She reported that she had been looking for work. (*Id.*)

She returned to Dr. Crain for additional visits in April, May, and September of 2011, reporting persisting pain even after physical therapy and a cortisone injection. (*Id.* at 388, 417, 445-65)  In June 2011 she received three Synvisc injections. (*Id.* at 414-16)  By her September visit, she reported improvement in the knee and was looking for work. (*Id.* at 412; *see also* D.I. 22 at 2 ("The evidence also shows that Plaintiff's knee pain responded well to Synvisc injections

and that she was looking for a job on September 28, 2011, shortly before her insured status expired.")) Still, she also had soreness. in both the shoulder and knee. (Tr. at 412)

When Plaintiff visited Dr. Crain in December 2011, she reported significant right knee pain and pain in her shoulder. (*Id.* at 410) Dr. Crain ordered an x-ray and noted that Plaintiff would need a knee replacement. (*Id.*)

Plaintiff returned to Dr. Crain in March 2012, frustrated by her knee pain, and noting she had episodes of it giving away, making her fearful to use stairs. (*Id.* at 408) On Dr. Crain's recommendation, in April 2012 Cannon underwent arthroscopic surgery on her knee. (*Id.* at 404-05) During a post-operative visit, Cannon reported continued knee discomfort and was using a cane to assist her walking. (*Id.* at 404) On May 16, 2012, Plaintiff complained of soreness in her knee, but she also had full motion of the knee. (*Id.* at 555) She was still using a cane during a visit on June 27, 2012, during which she reported episodic instability of the knee. (*Id.* at 554) Dr. Crain gave her a note permitting light-duty desk type work. (*Id.*)

In July and August 2012, Plaintiff participated in physical therapy. (*Id.* at 420-33) She still reported significant knee pain thereafter. (*Id.* at 425) In August, Plaintiff made two visits to Dr. Crain's office, one on an emergency basis. complaining of ongoing knee pain, that she was continuing to use a cane, and describing a recent visit to the emergency room where she tripped on the steps and fell.[1] (*Id.* at 521-27, 552) In September 2012, another round of Synvisc injections was prescribed. (*Id.* at 549; *see also* D.I. 22 at 15 ("Significantly, after a series of Synvisc injections to Plaintiff's knee, she told PA Lohkamp that she had been looking for

---

[1]Notably, the Emergency Room Report for this incident notes that Cannon alleged pain in the lower back and left ankle, not her right knee. (Tr. at 521-27)

work.") (citing Tr. at 386))

On September 27, 2012, Cannon reported to Dr. Morgan, an orthopedic surgeon, that she had knee pain and instability. (Tr. at 483) She underwent an MRI of her right knee on October 2, 2012, which showed post partial medial meniscectomy with absence of the body and associated loss of cartilage on weightbearing medial femoral condyle which is moderate. (*Id.* at 481) She saw Dr. Morgan again on October 11, 2012, noting knee pain. (*Id.* at 482)

On November 30, 2012, Cannon was seen on an emergency basis at Wilmington Hospital, due to a fall, during which her leg gave out. (*Id.* at 515) X-rays showed degenerative changes in her knee. (*Id.* at 516)

On August 26, 2013, after the March 2013 ALJ decision, Cannon underwent knee replacement surgery. (*Id.* at 9-10)

### 2. Medical Opinions

#### a. Treating physician opinion

Dr. Omar Khan, one of Cannon's treating physicians, issued a note on January 31, 2011 supporting Cannon's need for a handicapped tag due to her chronic, severe knee pain. (Tr. at 547) Dr. Khan also opined that Cannon would be unable to work for more than a year. (*Id.* at 548)

On January 25, 2013, Dr. Khan completed a Physical Medical Source Statement. (*Id.* at 563-66) In it he opined, among other things, that Plaintiff could only sit for two hours out of an eight hour day, would need unscheduled breaks of 10 minutes every two hours, and had limitations in how frequently she could use her right and left arms, hands, and fingers. (*Id.* at 564-65) He believed it was likely she would be absent from work more than four times per

5

month due to her conditions.  (*Id.* at 566)

### b.    Non-treating physicians

On November 11, 2010, non-treating physician Dr. Michael Borek reviewed Cannon's

medical records and concluded, among other things, that she could stand and/or walk for four

hours in an eight hour workday and sit about six hours during such a day.  (*Id.* at 71)  He opined

that Plaintiff's RFC was for "sedentary" work.  (*Id.* at 73)

On May 18, 2011, Dr. Joseph Michel, a state agency consultant, performed a secondary

review and affirmed the assessment of Dr. Borek.  (*Id.* at 396)

### 3.    The Administrative Hearing

On January 28, 2013, the ALJ held a video hearing with Plaintiff.  Plaintiff was

represented by counsel.  The ALJ heard testimony from Plaintiff and Tony Melanson, an

impartial vocational expert ("VE").  (Tr. at 23)

### a.    Plaintiff's testimony

Plaintiff was born on August 11, 1961 and has a high school diploma plus one year of

college-level education.  (*Id.* at 67, 172)  Plaintiff's past relevant work experience includes being

a warehouse worker, prisoner transport driver, customer service clerk, and retail work.  (*Id.* at 46)

Plaintiff stopped working in 2008 due to pain in her back and legs, allegedly resulting from

standing for long periods at her job in a warehouse.  (*Id.* at 45)  Plaintiff lives in a home with her

parents, eldest daughter, grandson, and husband, all of whom share responsibilities for

maintaining the household.  (*Id.* at 44-55, 47-48)

Plaintiff is 5' 5" tall and weighs 220 pounds; her physician has recommended that she

"keep [her] weight up, but not too high," while taking thyroid medication.  (*Id.* at 44, 55)

Plaintiff also testified to taking additional medications for her arthritis, back, and Graves disease but noted that none of these medications present significantly debilitating side-effects. (*Id.* at 48-49)

Plaintiff also testified to limitations resulting from her impairments. (*Id.* at 46-56) Plaintiff stated that her back surgery from three years before the hearing rendered it difficult to sit and stand for extended periods. (*Id.* at 46) She testified to having difficulty walking and "constantly falling" due to arthritis in her knees. (*Id.*) Her thyroid problem causes exhaustion, posing the risk of Plaintiff falling asleep while simply sitting down. (*Id.*) She also explained that limitations with her shoulder left her unable to lift her right arm over her head. (*Id.* at 55)

According to Plaintiff, the combination of pain from her back and knees keeps her awake "all night practically every night," while the thyroid issue exacerbates that lack of sleep by making Plaintiff even more tired during the day. (*Id.* at 54) She has lost her ability to dance or play sports and must take a break from walking after five minutes. (*Id.*)

### b.   Vocational expert's testimony

The VE testified that Plaintiff's past relevant work ranged from medium unskilled, medium semiskilled, light low end of skilled, and light unskilled work. (*Id.* at 46) The ALJ posed five hypothetical questions to the VE. (*Id.* at 57-66) In the first hypothetical, the ALJ asked whether a hypothetical individual, with limitations corresponding to Plaintiff's (carrying 20 pounds only on occasion, carrying 10 pounds frequently, standing and walking as much as four hours in a given day, sit as much as 6 hours, squatting and crouching occasionally with no kneeling or crawling, can occasionally climb stairs and balance but not climb ladders or scaffolds), with her same age, education, and experience, who can perform within a schedule,

concentrate, and pay attention, could perform work that is not limited to simple, entry-level, unskilled work. (*Id*. at 57-59)  The VE responded that such a person could perform general office work, such as a receptionist or office messenger, and stated that roughly 7,900 jobs exist in the local region for such a person. (*Id*. at 59-60)  In the second hypothetical, the ALJ asked whether any of the jobs noted above include a sit/stand option; the VE responded that they do not. (*Id*.)

In the third hypothetical, the ALJ asked whether the jobs available from the first hypothetical would still exist when the hypothetical person is also limited to occasional reaching above her head with more than one arm. (*Id.* at 63)  The VE responded that the positions of general office worker, receptionist, and office messenger would all remain available even with the limitations on reaching. (*Id.*)

In the fourth hypothetical, the ALJ asked the VE to assume that the hypothetical person gave identical testimony as Plaintiff, with respect to pain, medical conditions, tiredness, limitations, etc., and asked the VE whether such a person would be subject to falling off task or become tardy and absent at the potential job placements noted in the VE's response to the first and third hypotheticals. (*Id.* at 60-61)  The VE opined that such a hypothetical person would see a drop in productivity of up to 20% (roughly 1.5 hours per day), and that such a person would not be able to perform substantial gainful activity. (*Id.* at 62-63)

Finally, the ALJ asked the VE to modify hypothetical three (with the one-arm limitation) and limited the hypothetical person to specific vocational preparation ("SVP") level 1 and 2, and only to unskilled work, and then inquired whether jobs would still exist for such a person. (*Id.* at 64)  The VE responded that jobs would exist in the regional market such as a packer or an

8

assembler in almost any industry as well as night security jobs.  (*Id.* at 64-65)

### 3.    The ALJ's Findings

The ALJ concluded that Plaintiff's medical conditions were not disabling and that Plaintiff could perform some of her past relevant work (Step Four of the analysis).  (*See* Tr. at 20-40)  In reaching this conclusion, the ALJ first considered the nature and severity of Plaintiff's physical and mental impairments.  (*Id.* at 25-27)  The ALJ determined that Plaintiff's degenerative disc disease, Grave's disease, diabetes mellitus, osteoarthritis, and obesity were severe impairments, resulting in more than mild limitations in the Plaintiff's ability to perform basic work activities.  (*Id.* at 25)  However, Plaintiff's right shoulder impairment did not rise to the level of a severe impairment, as it required minimal treatment and did not result in any continuous functional limitation.  (*Id.*)

In assessing the Plaintiff's residual functional capacity ("RFC") to perform work, the ALJ determined that Plaintiff could perform a limited range of light work, which included her previous employment as a customer service representative, telemarketer, and a retail sales clerk. (*Id.* at 27-33)  In terms of RFC, the ALJ found that Plaintiff could lift and carry as much as 20 pounds occasionally and 10 pounds frequently, can stand/walk in excess of 2 hours but not more than 4 hours in a given workday, can sit as much as 6 hours in a given workday, and can only occasionally stoop, crouch, crawl, climb stairs, balance and squat.  (*Id.* at 27)  The ALJ also found that Plaintiff would be limited in her ability to work as she cannot kneel, crawl, climb ladders/ropes/scaffolds, or work at dangerous heights and extreme temperatures.  (*Id.*)  The ALJ noted that Plaintiff is further limited by her inability to reach overhead with more than arm.  (*Id.* at 34-35)

9

Specifically, the ALJ made the following factual findings:

1.      [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.

2.      [Plaintiff] has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date.

3.      [Plaintiff] has the following severe impairments: degenerative disc disease, Grave's disease, a thyroid disorder, diabetes mellitus, osteoarthritis, and obesity.

4.      [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listen impairments in 20 C.F.R. Part 404, Subpart A, Appendix 1.

5.      After careful consideration of the entire record . . . [Plaintiff] has the residual functional capacity to perform a limited range of light work.  Specifically, she can lift and carry as much as 20 pounds occasionally and 10 pounds frequently, can stand/walk in excess of 2 hours but not more than 4 hours in a given workday, can sit as much as 6 hours in a given workday, and can only occasionally stoop, crouch, crawl, climb stair, balance, and squat.  She cannot kneel, crawl, climb ladders/ropes/scaffolds, work at dangerous heights or around dangerous machinery and must avoid concentrated exposure to heat, cold, humidity, and vibrations.  She is further limited to work that allows her to reach overhead with only one arm.  She can understand, remember and carry out detailed/2-3 step instructions, is not limited to simply/entry level unskilled work.  She can perform work within a schedule, be on time and produce an adequate amount of work.

6.      [Plaintiff] is capable of performing past relevant work as a customer service representative/telemarketer and retail sales clerk. This work does not require the performance of work-related activities precluded by the [Plaintiff]'s residual functional capacity.

7.      [Plaintiff] has not been under a disability, as defined in the
Social Security Act, from June 1, 2008, through the date of
this decision.

(Tr. at 25-35)

## III.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586

n.10 (1986).  A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed

must support its assertion either by citing to "particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for the purposes of the motions only), admissions, interrogatory answers,

or other materials," or by "showing that the materials cited do not establish the absence or pres-

ence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support

the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party has carried its burden, the

nonmovant must then "come forward with specific facts showing that there is a genuine issue for

trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted).  The Court will "draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than

11

simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586–87; *see also Podohnik v. U.S. Postal Service,* 409 F.3d 584, 594 (3d Cir. 2005) (stating that party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).  However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 411 U.S. 242, 247-48 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett,* 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party"s case, and on which that party will bear the burden of proof at trial").

## B.    Review of the ALJ's Findings

The Court must uphold the Commissioner"s factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir. 1986).  "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005).  As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

12

In determining whether substantial evidence supports the Commissioner"s findings, the

Court may not undertake a de novo review of the Commissioner"s decision and may not

re-weigh the evidence of record. *See Monsour,* 806 F.2d at 1190. The Court"s review is limited

to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel,* 239 F.3d 589,

593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered

by the Appeals Council or the District Court as a basis for remanding the matter to the

Commissioner for further proceedings, pursuant to 42 U.S.C. § 405(g). *See Matthews,* 239 F.3d

at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on

review if not supported by substantial evidence." *Gonzalez v. Astrue,* 537 F. Supp. 2d 644, 657

(D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that:

> A single piece of evidence will not satisfy the substantiality test if
> the [Commissioner] ignores, or fails to resolve, a conflict created
> by countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence – particularly certain types of
> evidence (e.g., that offered by treating physicians) – or if it really
> constitutes not evidence but mere conclusion.

*Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but,

rather, whether the Commissioner"s conclusion was reasonable. *See Brown v. Bowen,* 845 F.2d

1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently,

it must give deference to the ALJ and affirm the Commissioner"s decision if it is supported by

substantial evidence. *See Monsour,* 806 F.2d at 1190-91.

## IV.   DISCUSSION

### A.   Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987).  Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program.  42 U.S.C. § 1382(a).  A "disability" is defined for purposes of both DIB and SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003) .

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel,* 186 F.3d 422, 427–28 (3d Cir. 1999).  If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating

14

finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant

is not engaged in substantial gainful activity, step two requires the Commissioner to determine

whether the claimant is suffering from a severe impairment or a combination of impairments that

is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of nondisability when

claimant"s impairments are not severe), 416.920(a)(4)(ii).  If the claimant"s impairments are

severe, the Commissioner, at step three, compares the claimant"s impairments to a list of

impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R.

§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer,* 186 F.3d at 428.  When a claimant"s

impairment or its equivalent matches an impairment in the listing, the claimant is presumed

disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If a claimant"s impairment,

either singly or in combination, fails to meet or medically equal any listing, the analysis

continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to

perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating

that claimant is not disabled if claimant is able to return to past relevant work); *Plummer,* 186

F.3d at 428.  A claimant"s RFC is "that which [the] individual is still able to do despite the

limitations caused by his or her impairment(s)." *Fargnoli v. Halter,* 247 F.3d 34, 40 (3d Cir.

2001).  "The claimant bears the burden of demonstrating an inability to return to her past relevant

work." *Plummer,* 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the

Commissioner to determine whether the claimant"s impairments preclude her from adjusting to

any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of

15

nondisability when claimant can adjust to other work); *Plummer,* 186 F.3d at 428.  At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits.  *See Plummer,* 186 F.3d at 428.  In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]."  *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant"s impairments.  *See id.*  At this step, the ALJ often seeks the assistance of a VE.  *See id.*

**B.     The Issues Raised on Appeal**

Cannon presents essentially four issues on appeal.  She contends that the Court should reverse the ALJ's decision and grant her benefits – or, at minimum, remand for further proceedings – based on the ALJ's following purported errors: (1) failing to accord adequate weight to the opinions of the non-examining consultative physicians; (2) failing to accord adequate weight to the opinions of Plaintiff's treating physicians; (3) erring in determining that Plaintiff had the RFC to perform light work; and (4) erring in finding that Plaintiff could perform some of her past relevant work.  The Court addresses each of these issues below.

**1.     Opinions of the Non-Treating Physicians**

Cannon first contends that the ALJ "failed to comply with SSR 96-6p by ignoring portions of the opinion of the state agency non-examining physician and by failing to provide any reasons for her obvious rejection of this evidence."  (D.I. 16 at 1)  Specifically, Cannon argues that the opinion of Dr. Borek – that Plaintiff was limited to "sedentary" work, at least in part because she was capable of only standing or walking for 4 hours out of an 8 hour day – was

16

ignored by the ALJ, when the ALJ found that Plaintiff could perform "light" work, which requires an ability to stand/walk for 6 hours out of an 8-hour day. (D.I. 16 at 14, 17) Dr. Borek's opinion was "affirmed" by another non-treating physician, Dr. Michel, whose opinion the ALJ is accused of further ignoring. (*Id.*)

The Court disagrees with Cannon. Contrary to Cannon's assertion, the ALJ did not "g[i]ve no reasoning for the rejection" (*Id.* at 2, 14) of the non-treating physicians' opinions. After explaining why she was according treating physician, Dr. Khan's, opinion "minimal weight" (as discussed further below), the ALJ explained that she had also considered the opinion of Dr. Borek, "who opined that the claimant is capable of light work with standing and walking of 4 hours." (Tr. at 33) The ALJ added that she "generally agrees with this opinion" but was "giving the claimant the benefit of the doubt" and being "more restrictive," by "further limit[ing] [Plaintiff] in her ability to walk/stand, kneel, crawl, climb ladders/ropes/scaffolds and in her ability to reach overhead with both arms." (*Id.*) This is not "ignoring" Dr. Borek's opinion.[2]

Social Security Ruling 96-6 requires state agency consultants giving opinions "be treated as expert opinion evidence." 20 C.F.R. § 404.1527(f)(2). The ALJ plainly did so. (*See* Tr. at 33 ("While the [ALJ] generally agrees with [the DDS medical consultant's opinion], the [ALJ] is ***more restrictive*** and . . . finds [Plaintiff] is ***further limited*** in her ability to walk/stand, kneel, crawl . . . ") (emphasis added))

---

[2]Cannon finds support in several decisions of this Court (*see, e.g.*, D.I. 23 at 4; D.I. 16 at 15-16), but each involved circumstances materially different from those presented here. *See Brown v. Astrue*, 590 F. Supp. 2d 669, 675-76 (D. Del. 2008) (expressing concerns regarding conflicts in medical record that ALJ did not explore, including "ignor[ing]" certain opinion); *Thomas v. Colvin*, 2014 WL 6847740, at *11 (D. Del. 2014) (reversing ALJ's finding of light work RFC, where "no mention" of "discrepancies in the State agency consultants' opinions" were provided).

As Defendant correctly explains, Dr. Borek found in his November 2010 review of the medical records that Plaintiff could lift 20 pounds occasionally, ten pounds frequently, walk/stand for four hours, and sit for six hours.  (D.I. 22 at 9 (citing Tr. at 71))[3]  "Because this is less than the six hours of standing in the definition of a full range of light work, Dr. Borek noted a current residual functional capacity (RFC) for sedentary work as claimant was four months 'post-operative,' but also noted that this RFC could improve by twelve months . . . ."  (*Id.* (citing Tr. at 73))  As Defendant explains, what Dr. Borek opined was that Plaintiff lacked the RFC to perform the full range of light work, because she could only stand or walk for four hours in an eight hour day and not for six hours.  (D.I. 22 at 12)  "[T]he restriction to less than a full range of the standing or walking involved in light work, as found by Dr. Borek, did not preclude Plaintiff from performing light jobs that exist in the national economy."  (*Id.* at 13)  Dr. Michel agreed that Plaintiff had the RFC to perform a reduced range of light work.  (*See* Tr. at 396)

The ALJ, too, concluded that Plaintiff did not have the RFC "to perform the full range of light work," as her "ability to perform all or substantially all of the requirements of this [light] level of work has been impeded by additional limitations."  (Tr. at 34)  The ALJ's conclusion that Plaintiff could perform light work, but not the full range of light work – a situation Dr. Borek described as "sedentary" work – is consistent with Dr. Borek's opinion, and is supported by substantial evidence.  (*See* Tr. At 71-74)

---

[3]Dr. Michel, after noting that Plaintiff's daily activities included taking care of her parents, driving her husband to and from work, and doing laundry, in May 2011 concluded that she appeared capable of performing activities as noted in Dr. Borek's assessment of RFC.  (*See* D.I. 22 at 9) (citing Tr. at 396)

## 2.    Opinions of the Treating Physicians

Cannon next argues that the ALJ erred by "failing to accord adequate weight to the opinions and assessments of Ms. Cannon's treating physicians" and by further failing to "consider all relevant medical evidence." (D.I. 16 at 1)  Specifically, she contends that the ALJ needed to accord greater, if not controlling, weight to the opinions of Drs. Khan and Crain.  (*See id.* at 20-23)

The Third Circuit subscribes to the "treating physician doctrine." *See Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  According to this rule, a treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in . . .[the] record." *Fargnoli*, 247 F.3d at 43.  A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (internal citation omitted).

When there is medical evidence contradicting the treating physician's view, the ALJ must carefully evaluate how much weight to accord the treating physician. *See Gonzalez*, 537 F. Supp. 2d at 660.  A decision not to give controlling weight to the opinion of a treating physician does not automatically result in giving no weight whatsoever to that opinion. *See id*.  In doing so, an ALJ must weigh all the evidence and resolve all material conflicts. *See Barnhill v. Astrue*, 794 F. Supp. 2d 503, 515 (D. Del. 2011).

If a treating physician's opinion is not given controlling weight, the ALJ should consider

19

numerous factors in determining the weight to give it, including: the length, nature, and extent of the treatment relationship; the frequency of examination; the amount of medical evidence offered in support of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the treating physician. *See* 20 C.F.R. §§ 416.1527(c)(2)-(6). Further, when an ALJ's decision is to deny benefits, the notice of the determination must

> contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave the treating source's medical opinion and the reasons for that weight.

S.S.R. 96-2P, 1996 WL 374188, at 5.

In reviewing the ALJ's analysis, it is not for the Court to re-weigh the medical opinions in the record. *See Gonzalez*, 537 F. Supp. 2d at 659. Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.*

Here, Plaintiff points to her treating physician, Dr. Khan, who in November 2011 gave Plaintiff a prescription for a handicapped parking sticker due to knee pain. (Tr. at 547) In January 2011, Dr. Khan signed a Medical Certification in support of Cannon's eligibility for public assistance and checked a box indicating that she could not perform her usual occupation or other full-time work. (Tr. at 548) In January 2013, Dr. Khan completed a Physical Medical Source Statement, indicating, among other things, that Plaintiff needed a cane while walking or standing and was capable of low-stress work. (Tr. at 564-66)

These are not detailed opinions. They do not cite medical records or other objective medical support. Moreover, Dr. Kahn referred Cannon to specialists for each of her ailments. And, as Defendant observes, "[n]one of the specialists of record indicated such severe restrictions

20

on Plaintiff's ability to lift, stand, or walk, as Dr. Kahn." (D.I. 22 at 14)

The ALJ concluded that Dr. Khan's "opinions are entitled to minimal weight as they are inconsistent with the minimal findings on examination and diagnostic testing as well as Dr. Kahn's own treatment notes, which reveal minimal objective findings on examination (Exhibits 2F, 24F)." (Tr. at 33; *see* Tr. at 284-291 ("Ex. 2F") and Tr. at 556-562 ("Ex. 24F")) This conclusion is supported by substantial evidence in the record. It is not for the Court to reweigh the evidence.

Plaintiff also faults the ALJ for "fail[ing] to explain why the use of a cane for balance [] was not included in Ms. Cannon's RFC." (D.I. 16 at 18) This criticism is based largely on the ALJ's purported failure to give controlling or at least appropriate weight to the opinions of Cannon's orthopedic surgeon, Dr. Crain (and a physician assistant of Dr. Crain's, who also treated Cannon). While the ALJ does not given an explanation for failing to include a "cane" limitation as part of Plaintiff's RFC, the ALJ was aware that, at times, Cannon used a cane to assist her walking. (*See* Tr. at 31 ("However, the claimant continued to experience weakness in her knee in June 2012 and was noted to be using a cane for balance.")) The ALJ's decision not to give attention to the sparse references to Cannon's use of a cane is consistent with the lack of attention given to it by Cannon's treating physicians and the medical records. There is little to no evidence of a cane being medically necessary.

Plaintiff overstates what the record shows with respect to her use of a cane. The only evidence she points to that even suggests a medical professional ever directed her to use a cane or found such use medically necessary are a few boxes that her treating physician, Dr. Khan, filled out in January 2013. (Tr. at 563-66) In the form, Dr. Khan answered "Yes" that "[w]hile

engaging in occasional standing/walking," his "patient [must] use a cane" – and that the "symptoms caus[ing] the need for a cane" were imbalance and pain. (*Id.* at 565)  The ALJ was free to not find this form to be substantial evidence justifying use of a cane as a limitation that would need to be accounted for in the RFC.  Among other things, it is from a general physician and not corroborated by Plaintiff's specialists; the ALJ could reasonably find this unexplained checked-box statement to be inconsistent with the other extensive medical records; and it is from January 2013, and therefore says nothing about the "necessity" of a cane in 2010 through 2012.

In her Reply Brief, Plaintiff writes that Dr. Crain "readily identified in his notes in 2012 that she continued to need the cane since her knee was giving out and was weak." (D.I. 23 at 5 (citing Tr. at 552, 554, 555))  But the cited pages do not show the doctor identifying the cane as being ***needed***.  Instead, they report in "History" that Cannon "does utilize her cane" (Tr. at 552), was "utilizing a cane for balance" (Tr. at 554), and was "utilizing a cane to assist with her ambulation" (*id.* at 555).  On "Physical Exam," Dr. Crain and an assistant found "[t]he knee itself looks fine" (*id.* at 552), "[t]here is no visible swelling or effusion" (*id.* at 554), and "her knee looks fine" (*id.* at 555).  In the "Plan" portion of the notes from these same visits, the medical professionals said they discussed "the consequences of knee replacement at her age" (*id.* at 552), "offered her an injection of cortisone" which was refused (*id.*), and are "going to just recommend an ongoing home exercise program with weights" (*id.* at 555).  Dr. Crain also stated that Cannon "needs to really work diligently on getting her strength back, which I think will help her tremendously from a pain standpoint." (*Id.* at 555)  In none of the three visits cited by Plaintiff did the physicians' "Plan" mention any need for use of a cane going forward. (*See, e.g.*, *id.* at 554 ("I am going to refer her for a short course of therapy.  We are going to see if this is helpful

in terms of discarding the cane and improving strength and balance.")[4]

In short, the weight the ALJ chose to accord to the opinions of the treating physicians is supported by substantial evidence.

### 3.      Residual Functional Capacity

Next Cannon argues that the ALJ's finding that she had the RFC to perform light work and return to her past relevant work was not supported by substantial evidence. (*See, e.g.*, D.I. 16 at 1) She states: "The RFC assessment determined by the ALJ contradicts the written assessment of Dr. Borek. Despite the ALJ's assertions, she adopted fewer limitations than suggested by the evaluation of Dr. Borek as to Ms. Cannon's ability to stand for six hours and her ability to perform light work." (D.I. 16 at 17)

As already explained above, the ALJ's RFC was, overall, more restrictive than Dr. Borek's. (*See* Tr. at 33-34) Unlike Dr. Borek, the ALJ found that Plaintiff could ***never*** kneel, crawl, or climb ladders, ropes, and scaffolds. (Tr. at 27) Moreover, the ALJ's conclusion is supported by substantial evidence. (*See, e.g.*, Tr. at 32) ("While the claimant alleges that she has suffered from debilitating back and knee pain since her onset date of June 1, 2008, her treatment notes reveal that with the exception of lumbar surgery in 2010, a right knee arthroscopy in April 2012 and several steroid injections in her knees, her treatment has been generally routine,

---

[4]The situation here is unlike that the Court confronted in *Powell v. Astrue*, 2012 WL 4364250 (D. Del. Sept. 24, 2012), on which Plaintiff relies (*see* D.I. 23 at 6). In *Powell*, the Court remanded a disability claimant's case because, in part, the record showed that a doctor had "***prescribed*** . . . a walking cane" yet the "ALJ declined to significantly limit [claimant's] residual functional capacity corresponding to this ***prescription***, holding that [claimant] did not establish that the use of the cane was medically necessary." *Powell*, 2012 WL 4364250, at *6 (emphasis added); *see also id.* at *7 ("The ALJ's repeated failure to address evidence supportive of [claimant's] claim justifies remand."). Here, the record does not show a cane being prescribed and the ALJ did not fail to address evidence supportive of Cannon's claim

conservative and includes gaps. . . . [S]he admitted at the hearing that she is not taking any

prescription medications for pain and that her pain is controlled with over-the-counter

medications, which further suggests that her pain is not as debilitating as alleged.")  The ALJ's

conclusion was well-supported by the record and also balanced: "[T]he undersigned does find

that the claimant has some limitations due to her impairments.  However, the totality of the

evidence fails to substantiate that her limitations are of the degree and intensity alleged and that

they are of a nature to preclude her from performing basic work activities, at least at the limited

light exertional level."  (Tr. at 32-33)

The Court agrees with Defendant, who writes:

> Based upon the objective medical evidence and other
> evidence of record, including Plaintiff's statements about her daily
> activities, the ALJ properly determined that Plaintiff could perform
> a limited range of light work that did not require standing or
> walking in excess of four hours a day, sitting for more than six
> hours, no more than occasional postural activities, no kneeling,
> crawling, climbing ladders, or working at dangerous heights or
> around dangerous machinery, or exposure to temperature extremes,
> humidity, and vibrations (Tr. 27).

(D.I. 22 at 2-3)[5]

The final responsibility for determining a claimant's RFC is reserved to the

Commissioner.  *See Breen v. Commissioner of Soc. Sec.*, 504 F. App'x 96, 99 (3d Cir. Nov. 14,

2012) (citing 20 C.F.R §§ 404.1546(c), 416.946(c)).  Here, there is substantial evidence to

---

[5] The ALJ's findings in regard to Plaintiff's activities of daily living – "She goes grocery
shopping but takes her husband with her; she spends time on the computer, watching TV and
helping with her mom" (Tr. at 28) – are supported by substantial evidence and provide additional
support for the ALJ's RFC.  Even on appeal Cannon acknowledges that her daily activities
included cooking for her parents when she is able to stand, shopping (albeit slowly and with
difficulty), and attending monthly church services.  (*See* Tr. at 192-95; D.I. 23 at 3)

support the ALJ's RFC.  There is, therefore, no basis for the Court to reverse or remand the ALJ's determination.

### 4.  Hypotheticals to the Vocational Expert

Finally, Cannon argues that "the hypothetical posed to the VE did not comprehensively describe Ms. Cannon's impairments." (D.I. 16 at 2)  Substantively, Plaintiff's criticism of the hypotheticals to the VE are essentially the same as her criticisms of the ALJ's determination of her RFC.  This is because the hypotheticals posed to the VE were based on assumptions about the RFC, as they must be in order for the VE's opinion to constitute meaningful evidence on which the ALJ can reasonably rely.  *See generally Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) ("[T]he vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.").

The VE opined that Cannon was capable of performing her past relevant work as a customer service representative/telemarketer and retail sale clerk.  (*See* Tr. at 33, 59-64)  Plaintiff had testified that her work as a customer service representative/telemarketer "did not require any lifting and allowed her to sit for 8 hours a day." (*Id.* at 33)

The ALJ's conclusion is supported by the RFC, which is consistent with Cannon being able to perform some light work – although not the entire range of light work.  The substantial evidence supporting the ALJ's conclusion means that, at Step Four of the analysis, Plaintiff is no

disabled.[6]

## V.   CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for summary judgment

and will grant Defendant's cross-motion for summary judgment.

An appropriate Order will be entered.

---

[6]Given the Court's conclusion, it is unnecessary for the Court to determine whether the ALJ was also correct in finding Cannon not disabled at Step Five as well.